D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

MARTIN ROB CAGAN,

                Plaintiff,

        -against-

BRONEY GADMAN et al.,

             Defendants.
_____X

**ORDER**
**08 CV 3710 (SJF)(ARL)**

FEUERSTEIN, J.

On September 12, 2008, *pro se* plaintiff Martin Rob Cagan ("Plaintiff") commenced this action against defendants Broney Gadman ("Gadman"), Elizabeth Gadman, Broney Gartland Gadman Jr., Michael Gadman, Ruthann Gadman, Tony Bonventre, Betty Catalfo, Home Perfections, Inc., a New York Corporation, BMD, Inc., a New York Corporation, BGJR, Inc., a New York Corporation, Fox Williams Solicitors, Mark Tasker, Caroleen Vanhoomissen Phillips, Morris Eagerman, and Cherie A. Gadman (collectively, "Defendants") pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), asserting claims, inter alia, for fraud. On August 6, 2009, this Court granted the motions to dismiss of defendants Fox Williams Solicitors, Mark Tasker, and Caroleen Vanhoomissen Phillips. The remaining Defendants now move to dismiss the Complaint, presumably pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendants' motion is denied.

I.    Background[1]

Plaintiff and Gadman were engaged in a business relationship as principals and operators of the New York Bagel Company Limited (the "NYBC"), a company limited by shares formed under the laws of the United Kingdom. (Complaint ("Compl."), at 24-25.) Plaintiff owned approximately ten percent (10%) and Gadman owned approximately ninety percent (90%) of the NYBC. (Compl., at 25.) The NYBC operated solely in the United Kingdom. (Id.; Pl. 56.1 Statement, at ¶ 4a.). In 2001, Plaintiff and Gadman entered into an agreement with Maple Leaf Foods, Inc. to sell NYBC for over six million pounds sterling (£6,000,000). (Compl., at 25-26.) As part of the sale, Plaintiff received approximately six hundred twenty-five thousand pounds sterling (£625,000), and, pursuant to a "Deed of Indemnity," Gadman agreed to pay any taxes which Plaintiff was assessed in the United Kingdom as a result of the sale. (Compl., at 25-26 .) Funds to accomplish this were placed in a trust account as security for both Gadman's commitments to Plaintiff and any claims by Maple Leaf Foods, Inc.  (Compl., at 25-26.)

Approximately one (1) year after the sale of the NYBC, Gadman contacted Plaintiff,

---

[1] As is required on a motion to dismiss, the factual allegations in the complaint, though disputed by Defendants, are accepted to be true for the purposes of this motion, and all reasonable inferences are drawn therefrom in favor of Plaintiff. They do not constitute findings of fact by this Court.

indicating that he "needed to fax to Plaintiff a document necessary to have Maple Leaf Foods, Inc. authorize the release of the retention fund money." (Compl., at 29.) The document received by Plaintiff indicated that the funds were to be disbursed to both Gadman and Plaintiff, in proportion to their ownership of the NYBC. (Compl., at 30.) However, Plaintiff alleges that the "money released from the retention fund was to be held by Charles Russell (Plaintiff's Solicitors) and Defendant Foxwilliams [sic] . . . , on behalf of Plaintiff and Defendant Gadman, until Plaintiff's entire tax liability . . . was satisfied." (Compl., at 30.) Plaintiff confronted Gadman about the discrepancy, and Gadman "requested that Plaintiff make any changes and amendments necessary to reflect what were to be the correct and legitimate instructions," sign the document, and return the document by fax. (Compl., at 30.) Plaintiff alleges that he amended the document to include instructions directing that the retention fund "be paid to an escrow account jointly held between Sellers [sic] Lawyers Fox Williams and Charles Russell," before signing the document and faxing it to Gadman. (Compl., at 31 (emphasis in original).) Plaintiff further alleges that Gadman, upon receiving the document from Plaintiff, copied Plaintiff's signature onto Gadman's original document which did not contain Plaintiff's amended instructions, and presented the document to Maple Leaf Foods, Inc. (Compl., at 38.) The retention fund was released to Gadman and Fox Williams Solicitors pursuant to the allegedly fraudulent instructions. (Compl., at 38).

Thereafter, Plaintiff filed a tax assessment in the United Kingdom, which resulted in Plaintiff owing approximately three hundred thousand dollars ($300,000) in taxes. (Compl., at 69.) Gadman allegedly never paid Plaintiff's taxes as agreed, and with interest and penalties,

Plaintiff currently owes over seven hundred thousand dollars ($700,000) in tax liabilities. (Compl., at 70.)

In October, 2003, Gadman was indicted for two (2) counts of wire fraud in the United States District Court for the District of Oregon (the "Oregon Criminal Action"). (Compl., Ex. 14, at 13.) Gadman pleaded guilty pursuant to a plea agreement, (Compl., at 44), and on June 23, 2009, Gadman was sentenced to five (5) years probation and ordered to pay one hundred twenty-five thousand dollars ($125,000) in restitution. United States v. Gadman, No. 03-CR-60105, Docket Entry 190 (D. Or., Jul. 7, 2009).

In 2004, Plaintiff commenced a civil suit in the High Court of Justice, Queen's Bench Division, Commercial Court in London, England against Gadman, Fox Williams Solicitors, and Mark Tasker. (Compl., at 13.) On April 30, 2004, the Commercial Court entered a judgment in favor of Plaintiff for two hundred sixty-seven thousand, two hundred twenty eight pounds sterling and eight pence (£267,228.08) for breach of contract of the Deed of Indemnity. Cagan v. Gadman, 2003 folio no. 949 (Queen's Bench, April 30, 2004).However, Gadman failed to pay Plaintiff pursuant to the judgment. (Compl., at 20.)

Thereafter, Plaintiff filed a complaint against Gadman, Fox Williams Solicitors, and Mark Tasker in the United States District Court for the District of Oregon (the "Oregon Civil Action"). (Compl., at 11.) The Oregon Civil Action was dismissed against Fox Williams Solicitors and Mark Tasker because the exercise of personal jurisdiction would be unreasonable, and against Gadman for "the alternative reasons of lack of personal jurisdiction would be unreasonably and the doctrine of *forum non-conveniens*." Cagan v. Gadman, No. 03-6028-TC,

at 1 (D. Or. Feb. 11, 2005). Plaintiff moved for reconsideration of the dismissal, and in denying his motion, the Court indicated that "Plaintiff may be able to address defendants' alleged actions with regard to defendants' assets and the United Kingdom judgment in the United Kingdom and/or New York." Id., at 2.

II.     Plaintiff's *Pro Se* Status

As Plaintiff is proceeding *pro se*, his submissions "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). Nevertheless, *pro se* plaintiffs must follow the rules of procedure governing pleading and dismissal. See Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983).

III.    Motion to Dismiss Pursuant to 12(b)(2)

A.      Legal Standard

In order to determine whether there is a basis to exercise personal jurisdiction over a defendant in a diversity case, a district court is required to apply a two (2) part analysis. See Grand River Enter. Six Nations, Ltd., v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005); Bank Brussels

5

Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). First, the court must look to the law of the forum state, here New York, to determine whether there is jurisdiction over the defendant. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006) (holding that in diversity cases, the issue of personal jurisdiction is governed by the laws of the forum state, so long as the exercise of jurisdiction comports with the requirement of due process); Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir.1996). Second, a court "must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." Bank Brussels, 171 F.3d at 784.

In opposing a Rule 12(b)(2) motion prior to discovery, "the plaintiff bears the burden of establishing that the court: has jurisdiction over the defendant * * *. Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Grand River, 425 F.3d at 165 (quoting Bank Brussels, 171 F.3d at 784) (citations and internal quotation marks omitted) (alteration in original). In order to make a prima facie showing of jurisdiction, the plaintiff need only plead "legally sufficient allegations of jurisdiction." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998)).

"Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the pleadings." ADP Investor Communication Servs. Inc. v. In House Attorney Servs. Inc., 390 F.Supp.2d 212, 217 (E.D.N.Y.2005). "[W]here the issue is addressed on affidavits, all allegations are construed in

6

the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."
Whitaker, 261 F.3d at 208 (quoting A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80
(2d Cir.1993)); see also In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d
Cir.2003) (holding that a plaintiff's averments of jurisdictional facts must be credited as true).

B.    Analysis

Defendants' sole argument regarding jurisdiction is that "the allegations set forth in the
complaint do not even remotely allege any . . . continuous permanent substantial activity in the
state of New York," and as such, this Court does not have jurisdiction over Defendants pursuant
to Section 301 of New York's Civil Practice Law and Rules ("CPLR"). (Def. Mem., at 4.)
However, CPLR Section 301 broadly states that "a court may exercise such jurisdiction over
persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301.
Jurisdiction pursuant to CPLR Section 301 may be premised upon, *inter alia*, a defendant's
domicile being established within New York. See Rawstorne v. Maguire, 265 N.Y. 204, 207,
192 N.E. 294, 295 (N.Y. 1934) (noting that the "courts of the state can obtain jurisdiction of the
persons of those who are domiciled within the state"). Upon a motion to dismiss, a plaintiff need
"only demonstrate that facts 'may exist' to exercise personal jurisdiction over the defendant[s]."
Ying Jun Chen v. Lei Shi, 19 A.D.3d 407, 408, 796 N.Y.S.2d 126 (N.Y. App. Div. 2005). As
Plaintiff has averred that all Defendants reside or have their place of business within New York,
he has established that facts may exist to establish jurisdiction over Defendants. (see DE 4-14,

20; Compl., at 5-6; Pl. Decl., at ¶ 19 (stating that the Defendants "reside, and conducted business during all relevant time periods, and do still today, in Suffolk County, Long Island, New York.")) See also Texas v. Florida, 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939) (noting that domicile is established by "residence in fact, coupled with the intent to make the place of residence one's home"); Sease v. Central Greyhound Lines, Inc. of New York, 306 N.Y. 284, 117 N.E.2d 899 (1954) ("The domicile of a corporation is the State in which it is incorporated."); Unanue v. Unanue, 141 A.D.2d 31, 40, 532 N.Y.S.2d 769 (N.Y. App. Div. 1988) (noting that a party's place of residence can indicate his or her domicile). Therefore, Defendants' motion to dismiss for lack of jurisdiction is denied.

IV.    Motion to Dismiss Pursuant to Rule 12(b)(6)

A.    Legal Standard

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081. See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). However, a

8

"pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S. Ct.1955, 167 L. Ed. 2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Ashcroft, --- U.S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868 (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, --- U .S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868.

In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied, 128 S. Ct. 2964, 171 L. Ed. 2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this standard "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, --- U .S. ----, 129 S. Ct. at 1949, 173 L. Ed. 2d 868. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice

may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-53.

      B.     Analysis

      Defendants contend that Plaintiff's action should be barred by the doctrine of *res judicata* as he brought the same claims in the Oregon Civil Action. Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); see Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-287 (2d Cir. 2002). To establish the affirmative defense of *res judicata*, the defendant must show (1) that the prior action involved an adjudication on the merits; (2) that the prior action involved the same plaintiffs or those in privity with them; and (3) that the claims asserted in the subsequent action were, or could have been, raised in the previous action. Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 285 (2d Cir. 2000).

      Insofar as Defendants contend that the Oregon Civil Action precludes Plaintiff from relitigating his claims in this forum, the Oregon Civil Action was dismissed as against Gadman for "the alternative reasons of lack of personal jurisdiction . . . and the doctrine of forum non-conveniens," Cagan v. Gadman, No. 03-6028-TC, at 1 (D. Or. Feb. 11, 2005), and "*res judicata* is inapplicable if formal jurisdictional or statutory barriers precluded the plaintiff from asserting its claims in the first action." Computer Associates Intern., Inc. v. Altai, Inc., 126 F.3d 365, 370

(2d Cir. 1997). See also Lefkowitz v. Bank of New York, No. 01 Civ. 6252, 2009 WL 5033951, at *35 (S.D.N.Y. Dec. 22, 2009) (noting that *res judicata* "does not afford a defense, however, if the initial forum lacked the authority to grant the full measure of relief sought in the later litigation"). Moreover, insofar as Defendants argue that the restitution order in the Oregon Criminal Action is *res judicata* as against Plaintiff's fraud claim, a defendant's prior criminal restitution order can not be applied as *res judicata* against à plaintiff's subsequent damages action. See United States v. Goldston, 324 Fed. Appx. 835, 2009 WL 1109314, at **1, n. 1 (11th Cir. Apr. 27, 2009) (noting that "a prior criminal restitution order has never been applied as *res judicata* against a subsequent damages action"); Morse v. Commissioner of Internal Revenue Service, 419 F.3d 829, 834 (8th Cir. 2005) (holding that "[b]ecause the criminal prosecution and the civil fraud action are distinct causes of action, the civil fraud claim is not barred by *res judicata*"); DePage Paper Stock, Inc. v. Matsukis, No. 07 C 3008, 2008 WL 410641, at *4 (N.D. Ill. Feb. 12, 2008 (holding that *res judicata* does not bar plaintiff from recovering damages in an amount greater than the amount of restitution defendant was required to pay plaintiff in defendant's criminal case). Therefore, Defendants' motion to dismiss Plaintiffs Complaint as barred by *res judicata* is denied.

11

V.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss the Complaint is denied.

**SO ORDERED.**

SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 21, 2010
      Central Islip, New York

Copy to:

Martin Rob Cagan
1400 SW 124th Terrace
Cambridge Q #303
Pembroke Pines, FL 33027