UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARTIN ROB CAGAN,

                    Plaintiff,

                  **MEMORANDUM AND ORDER**
      -against-                    08-CV-3710 (SJF)(ARL)

BRONEY GADMAN, et al.,

                  Defendants.
----------------------------------------------------------X

FEUERSTEIN, J.

I. Introduction

Plaintiff Martin Rob Cagan ("plaintiff"), appearing pro se, commenced this action against Broney Gadman ("Gadman"), Elizabeth Gadman, Broney Gartland Gadman, Jr., Michael Gadman, Ruthann Gadman, Tony Bonventre, Betty Catalfo, Home Perfections, Inc., BMD, Inc., BGJR, Inc., Morris Eagerman, Cherie A. Gadman (collectively, "defendants"), Fox Williams Solicitors, Mark Tasker, and Caroleen Vanhoomissen Phillips, alleging fraud and civil conspiracy. [Docket Entry Nos. 1-2].

By order dated August 6, 2009, the Court granted motions to dismiss filed by former defendants Fox Williams Solicitors, Mark Tasker, and Caroleen Vanhoomissen Phillips. [Docket Entry No. 77]. On April 21, 2010, the Court denied the remaining defendants' motion to dismiss. [Docket Entry No. 98].

On June 9, 2010, plaintiff filed a motion for partial summary judgment. [Docket Entry

1

No. 101]. Plaintiff died that same day, [Docket Entry No. 104], and this action was administratively closed pending designation of plaintiff's personal representative. [Docket Entry No. 111]. On or about October 27, 2010, a Florida court appointed plaintiff's mother, Pearl Cagan, personal representative of his estate. [Docket Entry No. 112]. On February 3, 2011, the Court granted plaintiff's motion to reopen this case. [Docket Entry No. 118].[1]

On June 15, 2011, plaintiff, now represented by counsel, filed a renewed motion for partial summary judgment on his claims of fraud and civil conspiracy. [Docket Entry No. 126]. Finding that plaintiff failed to present any evidence of damages suffered as a result of Gadman's fraud, the Court denied the motion for partial summary judgment on March 28, 2012. [Docket Entry No. 130].

Plaintiff now moves again for summary judgment on the fraud claim, punitive damages, and to enforce a foreign judgment entered in the United Kingdom in plaintiff's favor against Gadman. [Docket Entry No. 138]. For the reasons set forth below, plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

II. Standard of Review[2]

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). An issue of fact is genuine only if "the

---

[1] For the sake of convenience, plaintiff's estate will be referred to herein as "plaintiff."

[2]This Court previously set forth the factual background of this case in its March 28, 2012 Order. [Docket Entry No. 130]. Familiarity with that opinion is presumed, and only those additional facts relevant to this opinion are described.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vt., 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

Federal Rule of Civil Procedure 56 provides that if a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered" against the non-movant. Fed. R. Civ. P. 56(e). However, where the motion for summary judgment is unopposed, "the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vermont Teddy Bear Co. v. Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). The Second Circuit has stated:

> the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment. Instead, the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law.

Id. at 244.

III. Analysis

3

A.  Fraud Claim

Gadman does not dispute the collateral estoppel effect of his prior fraud conviction, but argues that he has complied with the restitution obligations imposed following his conviction and that the U.K. tax authorities have deemed plaintiff's tax liability to be satisfied. Therefore, according to Gadman, plaintiff has suffered no damages as a result of the fraud. In support of his argument, Gadman has submitted a letter dated January 14, 2009 from HM Revenue & Customs, "the apparent agent for collection of taxes relevant to the claim herein in the United Kingdom," Declaration of Reynold Mauro [Docket Entry No. 128] ("Mauro Decl.") at ¶ 6, which states that it "has accepted the sum of £80,000 in full and final settlement of Mr. Cagan's SA liability for 2001/02, [and] no further demands will be issued to him in respect of the year." Id. at Ex. B.

The Court denied the previous motion for partial summary judgment due to plaintiff's failure to present evidence of any damages suffered as a result of the fraud, an essential element of a fraud cause of action, [Docket Entry No. 130], and directed plaintiff to "present evidence and/or testimony sufficient to establish the existence of, and extent of, plaintiff's damages resulting from the fraudulent acts at issue in this case." Id.

In support of the renewed motion for summary judgment, plaintiff offers two (2) declarations that purportedly establish the damages suffered: (1) the Declaration of Elzbieta Lisowska [Docket Entry No. 138-9] ("Lisowska Decl."); and (2) the Declaration of Julie Malone [Docket Entry No. 138-11] ("Malone Decl."). According to plaintiff, these declarations establish that as a result of Gadman's fraud, plaintiff: (1) lost earnings in the amount of seventy-five thousand pounds (£75,000) per year; (2) paid at least one hundred twenty thousand dollars ($120,000) in legal and professional fees related to the case; (3) spent over five thousand (5,000)

4

hours of his time in litigating the case; and (4) spent approximately thirty-nine thousand, seven hundred ninety dollars and sixty cents ($39,790.60) in "fees, research and attendance at various courts in his pursuit to bring [defendant] to justice." Plaintiff's Memorandum of Law on Summary Judgment [Docket Entry No. 138] ("Pl. Memo.") at 10. Plaintiff requests that the Court assess damages in the alternative of: (1) a prorated salary for loss of earnings from the date of the fraud until plaintiff's death; (2) an hourly amount to be multiplied by the hours spent by plaintiff in pursuing his claims; or (3) reimbursement of between thirty-nine thousand, seven hundred ninety dollars and sixty cents ($39,790.60) and one hundred twenty thousand dollars ($120,000) for expenses incurred in pursuing his claims. Id. at 11.

Gadman has submitted several documents purporting to show his compliance with his restitution obligations to plaintiff, [Docket Entry No. 138-2], but otherwise fails to respond to the motion or contest the evidence submitted by plaintiff in support of his damages. Gadman also failed, without explanation, to appear before the Court for a status conference held on September 27, 2012.

Gadman's failure to respond to the evidence submitted by plaintiff allows the Court to accept plaintiff's factual assertions as true; however, "where a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" DiStiso v. Cook, No. 10-cv-4304, 2012 WL 3570755, at *2 (2d Cir. Aug. 21, 2012) (quoting Fed. R. Civ. P. 56(c)(4)); see also Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012) ("In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible at a trial.") (internal

5

quotation marks omitted).

Elzbieta Lisowska ("Lisowska") was plaintiff's fiancee at the time of his death. Lisowska Decl. at ¶ 1. With respect to plaintiff's alleged lost earnings, Lisowska states that plaintiff earned approximately six hundred thousand dollars ($600,000) per year as the Chief Executive Officer of the New York Bagel Company but after the sale of the company was "simply unable to gain employment at a similarly situated level" due to the large tax liability he incurred as a result of the fraud, and that "[h]ad the fraud not occurred . . . [p]laintiff would have no doubt been employed at a high level, earning at least £75,000 per year." Id. at ¶ 5. Lisowska also states that plaintiff's assertion that he spent over five thousand (5,000) hours on this case since 2008 is a "conservative estimation." Id. at ¶ 7. Lastly, Lisowska provides receipts for expenses incurred by plaintiff in attempting to resolve the tax liability created by the fraud, including travel costs and legal fees, and offers estimates of other expenses allegedly incurred for which there is no documentation. Id. at Ex. A.

Julie Malone ("Malone") is the mother of Gadman's child. Malone Declaration at ¶ 1. According to Malone, after her relationship with Gadman ended in 1993, she began working with plaintiff to pursue Gadman for money owed to them. Id. at ¶¶ 2-3. Malone "categorically state[s] that without the efforts that [plaintiff] expended, the payments due to [her] daughter and [her]self . . . would never have been satisfied." Id. According to Malone, "[t]he estimate that [plaintiff] provided of 5,000 hours [expended in pursuit of his claims against Gadman] prior to 2008, while [she] did not personally witness every hour of that, seems accurate." Id. at ¶ 4. Malone states that "[t]he fraud and the tax liability prevented [plaintiff] from taking another job as a CEO of a well-known food chain." Id. at ¶ 5.

"[T]he true measure of damages for fraud is indemnity for the actual pecuniary loss sustained as a direct result of the wrong." Tradex Global Master Fund SPC LTD v. Titan Capital Grp. III, LP, 944 N.Y.S.2d 527, 528-29 (App. Div. 2012). "[T]here can be no recovery of profits which would have been realized in the absence of fraud." Id. Therefore, speculation regarding plaintiff's lost employment opportunities is insufficient to support a claim for damages. See Rather v. CBS Corp., 886 N.Y.S.2d 121, 127 (App. Div. 2009) ("The loss of an alternative contractual bargain cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative.") (internal quotation marks and alterations omitted).

Furthermore, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Neither declaration demonstrates that the declarant is qualified to testify as to plaintiff's employment prospects or earning capability. The vague and speculative testimony as to the time plaintiff spent pursuing his claims against Gadman is inadmissible, and plaintiff has failed to offer a legal basis for measuring damages in this manner. Lisowska also fails to offer a sufficient basis for her estimate of other expenses incurred by plaintiff. However, the Lisowska Declaration includes documentary evidence that plaintiff incurred nineteen thousand, seven hundred ninety dollars and sixty cents ($19,790.60) in expenses as a result of the fraud. Since Gadman fails to contest this evidence, plaintiff is granted summary judgment with respect to his fraud claim against Gadman in the amount of nineteen thousand, seven hundred ninety dollars and sixty cents ($19,790.60).

B.  Punitive Damages

Plaintiff also seeks punitive damages on the fraud claim. The purpose of punitive damages under New York law is "to punish the defendant" and "to deter him and others from similar conduct in the future." Patterson v. Balsamico, 440 F.3d 104, 121-22 (2d Cir. 2006). Therefore, "[i]n a fraud cause of action, punitive damages may only be recovered when the conduct in question is aimed at the public generally, involves a high degree of moral culpability, and rises to a level of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" Ross v. Louise Wise Servs., Inc., 812 N.Y.S.2d 325, 331 (App. Div. 2006), aff'd 8 N.Y. 3d 478 (2007) (quoting Walker v. Sheldon, 223 N.Y.S.2d 488, 499 (1961)); see also Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1080 (2d Cir. 1977) ("[A]n award of punitive damages [is] not . . . proper where the wrong complained of was not aimed at the public generally, and where the possibility of punitive damages was not necessary to induce suit to right a wrong that would otherwise go unpunished."). Whether to award punitive damages is within the discretion of the Court. McCann v. Coughlin, 698 F.2d 112, 127 (2d Cir. 1983) ("It is, of course, axiomatic that the district courts are vested with discretionary authority in considering the propriety of punitive damages awards . . . .").

Plaintiff fails to offer evidence demonstrating that Gadman's conduct, even if "imply[ing] a criminal indifference to civil obligations," Ross, 812 N.Y.S.2d at 331 (internal quotation marks omitted), was aimed at the general public. Furthermore, Gadman has faced substantial punishment for his conduct, and there is no basis to conclude that additional damages are required to deter either Gadman or others from such conduct in the future. Accordingly, plaintiff's motion for summary judgment on the claim for punitive damages is denied.

8

C. Enforcement of the Foreign Judgment

Plaintiff seeks to enforce a judgment he obtained against Gadman from the High Court of Justice, Queens's Bench Division Commercial Court in the United Kingdom (the "U.K. Judgment"). [Docket Entry No. 136-5]. Courts in the United States grant comity to the judgment of a foreign court "if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." Cunard S.S. Co. Ltd. v. Salen Reefer Services AB, 773 F.2d 452, 457 (2d Cir. 1985). The procedure to enforce a money judgment in federal court is governed by the procedure of the state where the court is located. Fed. R. Civ. P. 69(a); Allstate Ins. Co. v. Administratia Asigurarilor de Stat, 962 F. Supp. 420, 424 (S.D.N.Y. 1997) ("Because this litigation arises under this Court's diversity jurisdiction, this Court must apply the law of the state in which it sits, New York, to its consideration of whether to enforce the [foreign] [j]udgment.") (citation omitted). New York has adopted the Uniform Foreign Money-Judgments Recognition Act (the "Recognition Act"), which provides for recognition of foreign country judgments which are "final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." N.Y. C.P.L.R. § 5302 (McKinney 2012). A foreign country judgment is not conclusive, and thus not enforceable, if: (1) "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;" or (2) "the foreign court did not have personal jurisdiction over the defendant." N.Y. C.P.L.R. § 5304(a) (McKinney 2012). A court may also in its discretion decline to recognize the foreign judgment if:

1. the foreign court did not have jurisdiction over the subject matter; 2. the

9

defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; 3. the judgment was obtained by fraud; 4. the cause of action on which the judgment is based is repugnant to the public policy of this state; 5. the judgment conflicts with another final and conclusive judgment; 6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; 7. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or 8. the cause of action resulted in a defamation judgment obtained in a jurisdiction outside the United States . . . .

N.Y. C.P.L.R. § 5304(b).

The judicial system in the U.K. provides impartial tribunals and procedures compatible with due process, Tropp v. Corp. of Lloyd's, No. 07 Civ. 414, 2008 WL 5758763, at *14 (S.D.N.Y. Mar. 26, 2008) ("[I]t borders on the risible to argue that the English system, from which ours explicitly derives, does not afford due process.") (internal quotation marks omitted), and the tribunal in the U.K. had personal jurisdiction over Gadman upon the basis of, inter alia, his appearance to defend himself in the action, see N.Y. C.P.L.R. § 5305(a) (McKinney 2012) ("The foreign country judgment shall not be refused recognition for lack of personal jurisdiction if . . . the defendant voluntarily appeared in the proceedings . . . .").

Gadman does not dispute that the U.K. tribunal provided due process and had personal jurisdiction over him. However, Gadman argues that the U.K. Judgment should not be enforced because U.K. authorities deemed plaintiff's tax liability to have been satisfied by payments made by Gadman pursuant to the restitution obligations imposed upon him following his criminal conviction. Mauro Decl. at ¶¶ 6-9.

The alleged satisfaction of plaintiff's tax liability may be a basis for Gadman to seek a declaration from the U.K court that the U.K. Judgment has been satisfied, see 22 Am. Jur. 2d

10

Damages § 28 (2012) ("[A] plaintiff who is injured by reason of a defendant's behavior is . . . entitled to be made whole, not to be enriched."), but the U.K. Judgment does not on its face condition Gadman's obligation to pay on whether plaintiff's tax liability remains outstanding, and thus there is no basis for this Court to do so. The U.K. Judgment meets the requirements of the Recognition Act and therefore must be enforced.

Plaintiff's calculation of the amount outstanding under the U.K. Judgment includes post-judgment interest accrued at eight (8) percent per annum (the statutory rate established by English law). See Pl. Memo. at 5. However, plaintiff has failed to reduce the U.K. award to a judgment including the post-judgment interest. See [Docket Entry No. 136-5]. Therefore, the post-judgment interest is not included in the U.K. Judgment and will not be enforced.

Additionally, plaintiff's calculation of the outstanding amount is incorrect insofar as it is based upon a conversion of the U.K. Judgment from pounds to dollars at the rate of exchange prevailing on the date of entry of the U.K. Judgment. In a diversity action, the date on which to convert a foreign currency judgment into United States dollars is governed by the law of the forum state. New York law provides that "[i]n any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation. Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree." N.Y. JUDICIARY LAW § 27(b) (McKinney 1987). Therefore, when converting the U.K. Judgment from pounds to dollars, the rate of exchange prevailing on the date of this Order shall apply. See Dynamic Cassette Int'l Ltd. v. Mike Lopez & Assocs., Inc., 923 F. Supp. 8, 12 (E.D.N.Y. 1996).

11

Plaintiff was awarded two hundred eighty-two thousand, seven hundred fifty-one pounds and thirty-three pence (£282,751.33) by the U.K. court on April 30, 2004. According to plaintiff, Gadman made two (2) payments that may be credited against the outstanding judgment: (1) a restitution payment of one hundred twenty-five thousand dollars ($125,000) on October 14, 2008 (which is equal to seventy-one thousand, five hundred two pounds and eleven pence (£71,502.11) when converted at the then-prevailing exchange rate of approximately one dollar seventy-five cents (1.7482) per pound);[3] and (2) a payment of eighty thousand pounds (£80,000) toward plaintiff's U.K. tax liability on January 13, 2008. See Pl. Memo. at 2-5. Therefore, the amount remaining outstanding on the U.K. Judgment is one hundred thirty-one thousand, two hundred forty-nine pounds and twenty-two pence (£131,249.22), which is equal to two hundred eleven thousand, six hundred ninety-one dollars and eighty-seven cents ($211,691.87) at the currently prevailing exchange rate of approximately one dollar sixty-one cents (1.6129) per pound.

D.  Discovery

Plaintiff seeks discovery from various parties in order to locate assets belonging to Gadman and defendants. Plaintiff states that it is "unlikely, given his track record to date, that [Gadman] will satisfy judgment pursuant to an Order of the Court." Id. at 12. As plaintiff has

---

[3]The Court has taken judicial notice of the prevailing exchange rate for U.S. dollars to U.K. pounds on the dates relevant here. See Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); see also, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 15 n.10 (1st Cir. 2008) (taking judicial notice of historic exchange rates); Aini v. Sun Taiyang Co., No. 96 CIV. 7763, 1997 WL 375735, at *1 (S.D.N.Y. July 7, 1997) (same). Historic exchange rates are readily determined by reference to the Federal Reserve Bank of New York website, and current exchange rates may be obtained from various daily news publications.

not yet attempted to execute the judgment against Gadman, the request for discovery is premature. Plaintiff may direct any future requests for post-judgment discovery in aid of execution to the assigned magistrate judge.

IV. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is granted against Gadman in the amount of two hundred thirty-one thousand, four hundred eighty-two dollars and forty-seven cents ($231,482.47), which includes nineteen thousand, seven hundred ninety dollars and sixty cents ($19,790.60) in damages on plaintiff's fraud claim and two hundred eleven thousand, six hundred ninety-one dollars and eighty-seven cents ($211,691.87) outstanding on the U.K. Judgment. The motion for summary judgment is denied in all other respects.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: October 31, 2012
Central Islip, New York